UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

KATHLEEN MCDONOUGH,
individually and on behalf of all
others similarly-situated,

      **Plaintiff,**                 **CASE NO.:**

v.

ADVENTIST HEALTH
SYSTEM/SUNBELT, INC.,

      **Defendant.**
_____/

## CLASS ACTION COMPLAINT

Named Plaintiff, Kathleen McDonough ("Plaintiff"), files this Class Action Complaint against Defendant, Adventist Health System/Sunbelt, Inc. ("Defendant"), because Defendant failed to provide her and the putative class members with notice of their right to elect continuation health coverage under COBRA/ERISA.

As explained below, Defendant improperly claims its health plan is a "church plan" exempt from COBRA's notice requirement. But Defendant is wrong. Defendant's health plan is not a church plan and, as, such, Defendant was required to provide Plaintiff and the putative class members with a COBRA notice that complies with the law.

Not only that, in May 2020, the Government extended the deadline to enroll in COBRA continuation coverage so that no one would lose their medical coverage

during COVID-19. *See* 85 Fed. Reg. at 26353-54 (Section III.A(2). Thus, if Defendant had not opted to improperly deny it is subject to ERISA/COBRA by application of the church exemption, Plaintiff's deadline to enroll would have been extended indefinitely, or at least until the Government declared the "National Emergency" related to COVID has ended. 85 Fed. Reg. at 26353. And during part of this period, specifically April through September of 2021, under the American Rescue Plan, the Government covers 100% of all COBRA premiums. In other words, Plaintiff and the putative class members each could have received health care coverage *for free*. But, of course, because Defendant has improperly claimed the church exemption, neither Plaintiff nor any of the putative class members are able to take advantage of this important Government subsidy.

As explained further below, Defendant's failure to provide Plaintiff with proper notice of her rights under COBRA caused Plaintiff real-world harm, including lost benefits, lost insurance, and economic harm in the form of medical bills. In further support thereof, Plaintiff states as follows:

## BRIEF OVERVIEW

1.    Defendant, the plan sponsor and de facto plan administrator of the AdventHealth Connerton Health Savings Plan Employee Benefits Program ("Adventist Health Plan"), has repeatedly violated ERISA by failing to provide plan participants with adequate notice, as prescribed by COBRA, of their right to continue their health insurance coverage following the occurrence of a qualifying event.

2

2.     More specifically, Defendant erroneously claims that the Adventist Health Plan it administers is a church plan that is exempt from COBRA's notice requirements under ERISA.

3.     Defendant then improperly relies on the church plan exemption to send out an abbreviated and legally deficient COBRA notice.

4.     But, as explained further below, the health plan under which Plaintiff and the putative class members were insured does not qualify for ERISA's church plan exemption.  Thus, Defendant was required to comply with COBRA's notice requirements, but failed to do so causing Plaintiff real-world harm in the form of lost insurance and incurred medical bills.

## JURISDICTION AND VENUE

5.     Venue is proper in the United States Court for the Middle District of Florida because the events giving rise to these claims arose in this district.

6.     Plaintiff is a Florida resident, resides in this District, and experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2) within this District.

7.     Defendant is a Florida-based company doing business in Florida and in this District.

## SUPPORTING LAW AND FACTUAL ALLEGATIONS

### COBRA Notice Requirements

8.     Congress' broad purpose in enacting COBRA was to "provide continued access to affordable private health insurance," which it believed was necessary because of "the growing number of Americans without any health

insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, Part 1, 99th Cong., 2d Sess. 44, reprinted in 1986 U.S.C.C.A.N. 579, 622.

9.     To this end, Congress provided that beneficiaries who would otherwise lose health coverage as a result of a qualifying event must be given the opportunity to continue that coverage for a specified period. 29 U.S.C. § 1161.  The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

10.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan."   29 U.S.C. § 1161. (Emphasis added).

11.     Notice is of enormous importance.   The COBRA notification requirement exists because employees are not presumed to know they have a federally protected right to continue healthcare coverage subsequent to a qualifying event.

12.     COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. §

4

1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

13. The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

> (4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:
>
> > (i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;
> >
> > (ii) Identification of the qualifying event;
> >
> > (iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;
> >
> > (iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;
> >
> > (v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a

description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

14.    To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

15.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110.00 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).

16.     Additionally, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

17.     Here, Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *The Church Exemption Does Not Apply*

18.     ERISA generally applies to any employee benefit plan, if it is established or maintained by an employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a).

19.     However, ERISA contains an exemption for "church plans." Church plans are plans "established and maintained...for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A).

20.     Church plans include plans maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement

8

benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.  29 U.S.C. § 1002(33)(C).

21.     Under Section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan must be both "established" and "maintained" by a church or by a convention or association of churches to qualify for the church plan exemption.

22.     Similarly, 29 U.S.C. § 1002(33)(C) makes clear that under ERISA a church plan includes: a plan maintained by an organization (1) which is controlled by or associated with a church, and (2) whose principal purpose is to administer or fund a retirement plan for church employees.  *See* 29 U.S.C. § 1002(33)(C).

23.     Defendant has not and cannot satisfy ERISA's strict requirements for the "church plan" exemption.

24.     As a threshold matter, the Plan cannot be considered as "established" and/or "maintained" by a church.

25.     Defendant is unquestionably responsible to care for the plan for purposes of operational productivity.  For example, the Plan was established and maintained by Defendant to provide health benefits and insurance to Defendant's employees so they may work for Defendant and, in turn, create billions in revenue for Defendant.

26.     Indeed, according to its own Consolidated Financial Statements, Defendant "...controls and operates hospitals and other healthcare facilities in the western United States (collectively, the "System"). Many of the hospitals now

controlled and operated by Adventist Health were _**formerly**_ operated by various conferences of the Seventh-day Adventist Church (the "Church"). The obligations and liabilities of Adventist Health and its hospitals and other healthcare facilities are neither obligations nor liabilities of the Church or any of its other affiliated organizations." *See* 2020 Consolidated Financial Statements, p. 6.  (Emphasis added).

27.    The Plan was, thus, not established and certainly not "maintained by a church or convention or association of churches," as required by the church exemption.

28.    Moreover, Plaintiff and the putative class members covered by the Health Plan are not employees of a permissible entity under the church plan exemption, meaning an entity controlled by or associated with a church.

29.    Rather, they are by and large former employees (and family members of former employees) who worked for a multi-billion dollar healthcare organization known as Adventist Health System.  It simply is not a church.

30.    For example, in 2020 alone, Adventist Health Systems reported over $4.7 billion in revenue and over $178 million in investment income. *See* 2020 Consolidated Financial Statements, p. 3.[1]   With a few exception, that is not the kind of revenue or income one typically associates with a  "church."

---

[1] Available at https://www.adventisthealth.org/documents/investor/2020-Annual-Audit-Report.pdf

31.     In addition to its substantial income, Defendant uses corporate bonds to fund its healthcare business. In 2021 the Company had over $2 billion in outstanding long-term debt through bond issuances. *See* 2020 Consolidated Financial Statements, p. 22.

32.     Moreover, Defendant's status as a healthcare business is shown by issuance of hundreds of millions of dollars in governmental bonds through Orange County (Florida) Health Facilities Authority and the Highlands County (Florida) Health Facilities Authority, governmental entities whose stated purpose is to assist the funding of health facilities.

33.     Despite the Plan's status as an ERISA plan, Defendant has invoked "church plan" status to evade ERISA's/COBRA's protections and notice requirements to which its employees are entitled.

34.     Defendant's failure to treat the Plans as ERISA plan deprived Plaintiff and the putative class members of their right to receive a COBRA noticed.

35.     Moreover, by avoiding ERISA's requirements, Defendant obtains a competitive advantage over other healthcare entities that comply with COBRA's notice requirements.

36.     Additionally, Defendant's purpose is to provide healthcare services, not to operate a church, much less a health plan for a church's employees.

37.     Since the Plan is maintained by a multi-billion dollar healthcare organization, it cannot be considered as having been maintained by "an organization ... the principal purpose of which is the administration or funding of

a plan or program for the provision of retirement benefits...." 11 U.S.C. § 1002 (33)(C)(i).

38.     Not only that, "[m]any of the hospitals now controlled and operated by Adventist Health were formerly operated by various conferences of the Seventh-day Adventist Church (the "Church").  Thus, Defendant's own website explains that while the Church may have "formerly" operated the hospital/entity which employed Plaintiff, it no longer does.

39.     Inexplicably, Defendant operates a pension plan, known as the University Community Health System Consolidated Pension Plan (the "Merged Plan"), which it elected to operate as an ERISA plan as of January 1, 2016.  If Defendant's pension plan is subject to ERISA, so is its health plan.

40.     Consequently, Defendant is subject to ERISA, including COBRA's notice requirements. This action seeks to require Defendant to comply with all of those requirements, and to pay damages and penalties as a result of its past failure to do so.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

41.     Defendant failed to provide a COBRA notice that complies with the law.

42.     Moreover, Defendant choose not to use the Model COBRA Notice to notify plan participants of their right to continuation coverage even though the Model Notice adequately provides all required information and would have provided Defendant with a "safe harbor" if used. The Model Notice further

demonstrates how the information can, and is required to, be written in a manner calculated to be understood by the average plan participant providing a near-foolproof way for persons to sign up for continuing coverage of their existing benefits.

43.     Rather than use the Model Notice, much less a compliant COBRA Notice, Defendant instead deliberately authored and disseminated a notice which omitted critical information required by law and also cut the election deadline short by at least one month.

44.     Defendant's deficient Notice discourage participants from enrolling in continuation coverage, including the Named Plaintiff here.

45.     Defendant's Notice violates several key COBRA requirements, including each of the following:

- Inclusion of the date by which the election must be made;

- An explanation of the continuation coverage termination date;

- An explanation of the consequences of failing to elect or waiving continuation coverage;

- An explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

- A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended;

- Identification of the qualifying event;

- Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event; and finally,

- Defendant failed to provide a notice "written in a manner calculated to be understood by the average plan participant."

*See* 29 C.F.R. § 2590.606-4 *et seq.*

46.    Not only that, Defendant's notice violated the 60-day enrollment deadline mandated by ERISA section 605 and 4980B(f)(5).  *See also* 29 U.S.C. § 1165(1).

47.    Defendant's COBRA Notice confused Plaintiff and resulted in her inability to make an informed decision as to electing COBRA continuation coverage.

48.    As a result of the deficient notice, Plaintiff did not elect COBRA continuation coverage and Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of health insurance coverage.  Insurance coverage is an employer subsidized benefit of employment of tremendous monetary value, the loss of which is a tangible economic injury.

49.    Furthermore, Plaintiff suffered a second tangible economic loss when she paid out-of-pocket for medical expenses incurred after she lost her health insurance.

50.    Plaintiff suffered an additional concrete harm in the form of stress and anxiety caused by the loss of her health insurance.

51.    Additional time was spent trying to figure out which providers would treat her when she lost her health insurance.

14

52.    Plaintiff did not enroll in the continuation coverages made available to her, based, in part, on the based on the deficiencies identified herein in the Defendant's notice, including but not limited to: its shortened deadline to enroll and the specific deficiencies identified in paragraph 43.

53.    The loss of her medical, dental, and vision are directly attributable to Defendant's deficient notice because they led to Plaintiff not enrolling in COBRA continuation coverage.

54.    In fact, because of Defendant's COBRA notice, which resulted in Plaintiff not electing COBRA continuation coverage, Plaintiff lost her health insurance.

55.    Not only that, in May 2020, the government extended the deadline to enroll in COBRA continuation coverage so that no one would lose their medical coverage during Covid. *See* 85 Fed. Reg. at 26353-54 (Section III.A(2).

56.    For COBRA enrollment deadlines that occur during the Covid "Outbreak Period," the deadline to enroll has been extended until "60 days past the end of the Outbreak Period." The Outbreak Period is defined as the period beginning on March 1, 2020 and continuing until 60 days after the end of the "National Emergency" (which the government has not yet declared to have occurred).  85 Fed. Reg. at 26353.

57.    This means that if Defendant had not opted to improperly deny it is subject to ERISA/COBRA by application of the church exemption, Plaintiff's deadline to enroll would have been extended indefinitely, or at least until the

15

Government declared the "National Emergency" related to COVID has ended. 85 Fed. Reg. at 26353.

58.     But, of course, because Defendant has improperly claimed the church exemption, neither Plaintiff nor any of the putative class members are able to take advantage of this crucial Congressional mandate.

59.     Defendant's deficient COBRA Notice caused Plaintiff an informational injury when Defendant failed to provide her with information to which she was entitled by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

60.     Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).   Defendant injured Plaintiff and the putative class members she seeks to represent by failing to provide them with the information required by law.

### *Facts Specific to Named Plaintiff*

61.     Plaintiff is a registered nurse who worked for Defendant from August of 2019 through May of 2020.

62.     During that time she obtained medical insurance from Defendant, which was particularly important because of a painful and ongoing serious medical

16

condition from which Plaintiff suffers (psoriatic arthritis) that requires constant medical treatment.

63.    On May 5, 2020, Plaintiff's employment ended.

64.    Plaintiff was not terminated for "gross misconduct" and was, therefore, eligible for continuation coverage.

65.    Following Plaintiff's termination, Defendant caused its administrator to mail Plaintiff the deficient notice identified herein.

66.    The notice was not written in a manner calculated to be understood by the average plan participant.

67.    The notice did not provide Plaintiff with the substantive information to she was entitled pursuant to federal law, as set out further below, giving rise to this lawsuit.

68.    Plaintiff was not required to exhaust any administrative remedies through Defendant prior to bringing suit because no such administrative remedies exist as this is not an ERISA claim for benefits.

69.    Even if they did exist, any attempts to exhaust the administrative remedies would have been futile as this is not an ERISA benefits case.   In fact, exhaustion of administrative remedies is not required because Plaintiff was not provided with proper notice of her rights in the first instance.

## CLASS ACTION ALLEGATIONS

70.    Plaintiff brings this action as a class action pursuant to Rule 23 Fed.R.Civ.P. on behalf of the following persons:

**All participants and beneficiaries in the Defendant's Health Plan who were sent the same deficient notice by Defendant that Plaintiff was sent, during the applicable statute of limitations period, who did not elect benefits**.

71.    No administrative remedies exist as a prerequisite to Plaintiff's claim on behalf of the Putative Class.  As such, any efforts related to exhausting such non-existent remedies would be futile.

72.    Numerosity:  The Class is so numerous that joinder of all Class members is impracticable.  On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

73.    Typicality:  Plaintiff's claims are typical of the Class.  The COBRA notice  that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members.  As such, the notice that Plaintiff received was typical of the notices that other Class Members received and suffered from the same deficiencies.

74.    Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class members; she has no interests antagonistic to the class, and she has retained counsel experienced in complex class action litigation.

75.    Commonality:  Common questions of law and fact exist as to all members of  the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a.    Whether the Plan is covered by ERISA;

    b.    Whether the Plan is a church plan;

18

    c.      Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

    d.      Whether Defendant's notice complied with the requirements of 29  U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    e.      Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

    f.      The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and, finally,

    g.      Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

76.    Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution.

77.    Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

78.     Plaintiff intends to send notice to all Class Members.  The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party COBRA administrator.

## CLASS CLAIM I FOR RELIEF
### *Violation of 29 U.S.C. § 1166 and*
### *29 C.F.R. § 2590.606-4, Enforced Through 29 U.S.C. § 1132*

79.     The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

80.     Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

81.     Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware of the same.

82.     On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice.

83.     The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above, for which Plaintiff brings this civil action under the authority found in 29 U.S.C. § 1132.

84.     These violations were material and willful.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

a.     Designating Plaintiff's counsel as counsel for the Class;

20

b.   Issuing proper notice to the Class at Defendant's expense;

c.   Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d.   Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e.   Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f.   Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g.   Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 14th day of July, 2021.       Respectfully submitted,

*/s/ Brandon J. Hill*
**LUIS A. CABASSA, ESQ.**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL, ESQ.**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com

*Attorneys for Plaintiff*

21