## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISON

**KATHLEEN MCDONOUGH,**
**individually and on behalf of all**
**others similarly-situated,**

        **Plaintiff,**                **CASE NO.: 8:21-cv-1706-WFJ-TGW**

**v.**

**ADVENTHEALTH BENEFITS**
**ADMINISTRATION COMMITTEE, and**
**ADVENTIST HEALTH SYSTEM SUNBELT**
**HEALTHCARE CORPORATION,**

        **Defendants.**
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Named Plaintiff, Kathleen McDonough ("Plaintiff"), pursuant to Fed.R.Civ.P. 15(a)(2) and this Court's Order dated September 27, 2021 (Doc. 12), files this First Amended Class Action Complaint against Defendants, AdventHealth Benefits Administration Committee ("the Committee Defendant") and Adventist Health System Sunbelt Healthcare Corporation ("Defendant Advent") (collectively, "Defendants").

As explained below, Defendants improperly claim the AdventHealth Employee Benefit Plan ("the Plan") is a "church plan" exempt from COBRA's notice requirement. But Defendants are wrong. Defendants' Plan is not a church plan and, as such, Defendants were required to provide Plaintiff and the putative class members with a COBRA notice that complies with the law. Defendants' failure to

provide Plaintiff with proper notice of her rights under COBRA caused Plaintiff real-world harm, including lost benefits, lost insurance, and economic harm in the form of medical bills.   In further support thereof, Plaintiff states as follows:

**BRIEF OVERVIEW**

1.     Defendants repeatedly violated ERISA by failing to provide plan participants with adequate notice, as prescribed by COBRA, of their right to continue their health insurance coverage following the occurrence of a qualifying event.

2.     More specifically, Defendants erroneously claims that the Adventist Health Plan is a church plan that is exempt from COBRA's notice requirements under ERISA.  Defendants further improperly rely on the church plan exemption to send out an abbreviated and legally deficient COBRA notice.

3.     Not only that, by taking the church exemption and not following ERISA/COBRA, Defendants precluded Plaintiff and the putative class members from taking advantage of the of the one-year extension Congress recently provided for enrolling *and* paying for COBRA.  *See* 85 Fed. Reg. at 26351.

4.     However, as described below, the Plan does not meet the requirements for the "church plan" exemption because it is not established or maintained by a church and is not "maintained" by an organization whose principal purpose is to administer or fund a retirement plan. The Plan is maintained by Defendant Advent, a large healthcare company that generates billions in revenue each year, and which pays over 24 separate employees in excess

2

of $500,000 annually.  In fact, Defendant Advent reported that 11 of its employees earned in excess of $1 million in 2019 alone.

5.     Not only that, at least two of Defendant Advent's employee benefit plans are, in fact, subject to ERISA.  It makes no sense for its health plan to not also be covered by ERISA.

6.     In sum, the health plan under which Plaintiff and the putative class members were insured does not qualify for ERISA's church plan exemption.

7.     Thus, Defendants were required to comply with both COBRA's notice requirements and also with the COBRA enrollment and payment extensions.

8.     Defendants failed to do so, thereby causing Plaintiff real-world harm in the form of lost insurance and incurred medical bills.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

10.     This Court has personal jurisdiction over this matter because Defendant Advent is headquartered and transacts business in and has significant contacts with this District.  Additionally, ERISA provides for nationwide service of process.   ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

11.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plan is administered in this District, (b) some

or all of the violations of ERISA took place in this District, and/or (c) the Defendants may be found in this District.

12.    Plaintiff is a Florida resident, resides in this District, and experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2) within this District.

## THE PARTIES

13.    Defendant Advent is a Florida not-for-profit corporation organized under, and governed by, the Florida Non-Profit Corporation Act, Fla. Stat. § 617 *et seq*.

14.    Defendant Advent employed Plaintiff.

15.    Additionally, Defendant Advent is the parent organization to approximately 27 hospital organizations and a number of other health care facilities that operate in 10 states with the United States.   The system of organizations under the control and ownership of Defendant Advent is commonly referred to "AdventHealth."

16.    The Committee Defendant is an internal committee of Defendant Advent, and is acting as an agent of Defendant Advent, and is designated as the "plan administrator" of the Adventist Health Plan by the terms of the instrument under which the Adventist Health Plan is operated.

**SUPPORTING FACTS**

***Defendant Advent's Operations and the Committee Defendant***

17.     Defendant Advent is a Florida not-for-profit corporation organized under, and governed by, the Florida Non-Profit Corporation Act, Fla. Stat. § 617 *et seq*.

18.     Defendant Advent does not claim to be a church and it is not one.  Nor does the Committee Defendant.

19.     In fact, Defendant Advent is not a convention nor association or churches, nor does it claim to be one.

20.     Rather, as the parent organization of AdventHealth, Defendant Advent's principal purpose "…is to provide executive leadership and other professional support services to its subsidiary organizations.  Professional support services include among others IT, corporate compliance, legal, reimbursement, risk management, and tax as well as treasury functions.  Certain support services, such as human resources, payroll, A/P, and supply chain management are provided pursuant to a shared services model by Defendant Advent to its subsidiary organizations."   Defendant Advent's 2019 IRS Form 990, p. 1.

21.     According to its website, Defendant Advent owns and operates nearly 50 hospital campuses, and more than 1,200 care sites throughout the nation.  It operates hospitals in nine states (Colorado, Florida, Georgia, Kansas, Kentucky,

Illinois, North Carolina, Texas and Wisconsin), and employees more than 80,000 people.[1]

22.     In 2019 alone Defendant Advent reported program service revenue of more than $4.5 *billion* dollars, far above what a church or religious organization would typically report.

23.     Additionally, Defendant Advent's 2019 balance sheet reflected nearly $3 billion in savings and temporary cash investments.

24.     Defendant Advent employees more than 80,000 people.[2]

25.     Like many other private hospitals, Defendant Advent relies, in part, on revenue bonds to raise money.

26.     Notably, unlike Churches, the high-ranking employees and management of Defendant Advent are comprised of lay people (not Church officials) and are extremely well paid.  In fact, detailed below, 24 of the highest-ranking employees earn between $500,000 to $4.2 million (the CEO) per year.

27.     Specifically, Defendant Advent's 2019 IRS Form 990 reported that its CEO was paid nearly $4.2 million per year.

28.     According to the same form, at least ten other employees each reported compensation from the organization in excess of $1 million per year.

---

[1]     https://www.adventhealth.com/business/adventhealth-central-florida-north-media-resources
[2]     https://www.adventhealth.com/business/adventhealth-central-florida-north-media-resources#:~:text=2%2C%202018.,and%20more%20than%2080%2C000%20employees.

29.     Moreover, an additional thirteen high-ranking employees of Defendant Advent earned over $500,000 annually.

30.     Such high-paying salaries are not typical of a church organization.

31.     Rather, these six and seven figure salaries are more in line with (if not in excess of) compensation paid to executive officers of other private hospital systems, not Church or religious organizations.

32.     Additionally, Defendant Advent claims to treat more than 5 million patients annually and claims to generate "[approximately $10 billion in operating revenue."[3]

33.     Notably, Defendant Advent does not limit its hiring or employment to those of the Seventh Day Adventist faith.  Rather, Defendant Advent hires people without any requirements as to religion.

34.     Also, Defendant Advent imposes no denominational requirements on patients or its business partners.

35.     Defendant Advent does not claim that any church has any liability for any of its debts or obligations, nor does any church have any role in the maintenance and/or administration of the Advent Health Plan.

36.     Similarly, as to the Committee Defendant, members of Defendant Advent's benefit committee are also independent of the Church.  Rather, these individuals are either employees, or officers, or directors, of and paid by Defendant

---

[3] https://www.adventhealth.com/business/adventhealth-central-florida-north-media-resources

7

Advent.   In fact, according to the Plan document, "the [Plan] Administrator shall serve without compensation for its services as such, but all reasonable expenses incurred in the performance of its duties shall be paid by the Employer."   (Plan, 8.4).

37.   The Plan defines "Employer" to mean "AdventHealth" collectively, of which Defendant Advent is the parent corporation.  (Plan, 1.12).

38.   Thus, Defendant Advent pays the wages of those employees who serve on the Committee Defendant and all expenses related thereto.  For example, Rena Freeman is the Committee Defendant Member responsible for executing the latest amendment to the Health Plan, effective January 1, 2020.  (Plan, p. 67).  Her current position is Vice President of Total Rewards for Defendant Advent—she is not a Church employee.[4]

39.   The Committee Defendant's principal purpose is administer the plan—as made clear by the Plan itself.  For example, the Plan makes clear the Committee Defendant has not committed to provide benefits (*see* Plan, p. 6.4); it does not fund the Plan or control the Plan funding policy.

40.   Although the Committee Defendant is designated as the "Plan Administrator," and has discretionary authority and power to determine eligibility for benefits within the parameters of the Plan, the Committee Defendant is merely implementing the Plan terms designed and adopted by Defendant Advent for the

---

[4] https://americanhealthcareleader.com/2019/rena-freeman-adventhealth/

purpose of providing benefits to Defendant Advent's employees in exchange for the hard work they perform in exchange for generating billions in revenue for the company.

### *Advent Admits Some of its Plans Are Subject to ERISA*

41.     Inexplicably, Defendant Advent picks and chooses which benefit Plans it believes should be governed by ERISA, and which should not.

42.     Obviously, if Defendants were truly operating "Church Exempt" plans, Defendants would apply the ERISA Church Exemption to all employee benefit plans, not just a few.

43.     For example, "The Adventist Health System Consolidated ERISA 401(a) Plan," is a "...defined contribution plan covering eligible employees of Adventist Health System Sunbelt Healthcare Corporation (the "Employer") and other participating employers," which is the same Defendant Advent named here. According to documents Defendant Advent filed with the Department of Labor, "The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA")."

44.     Similarly, Defendant Advent operates the "Adventist Health System Consolidated ERISA 403(b) Plan." Effective January 1, 2016, the trustees of the Plan have elected to have the Plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA") and those provisions of the Internal Revenue Code ("IRC") to which the Plan would otherwise be exempt as a church plan.

45.     So, at least two separate employee benefit plans (albeit retirement plans, not health plans) operated by Defendant Advent are, in fact, subject to ERISA.  There is no reason the Advent Health Plan should not be treated equally and also subject to compliance with ERISA, particularly considering the remedial purposes of ERISA and the importance of health care during the ongoing pandemic.

### *The Advent Health Plan At Issue in this Case*

46.     On the other hand, unlike the 401(a) and 403(b) Advent retirement plans, Defendants mistakenly argue their health plan is *not* subject to ERISA pursuant to the "Church Exemption."  Defendants are wrong.

47.     According to governing Plan document, the AdventHealth Employee Benefit Plan was last amended and became effective January 1, 2020.  (Plan, Preamble, p. 1).

48.     Without explanation, the Plan claims it is a "church plan" within the meaning of §414(e) of the Code and §3(33) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and therefore exempt from the requirements of ERISA.  (Plan, Preamble, p. 1).

49.     But none of the individuals included in the Plan—including Plaintiff and the putative class members—are "employee[s] of a church", as required under § 1002(33)(B)(ii) and (C)(ii)(II).

50.     Similarly, neither of the Defendants are controlled by the Seventh Day Adventist Church, as required under § 1002(33)(C).

51.     On other hand, as an employer establishing and/or maintaining the Advent Health Plan, Defendant Advent is and has been the Plan Sponsor of the Plan within the meaning of ERISA.

52.     Defendant Advent exercises discretionary authority or discretionary control respecting management of the Plan, exercises authority and control respecting management or disposition of the Plan assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan.

53.     For example, according to the Plan, both "[t]he Employer and/or Administrator shall maintain records reflecting a Participant Account for each Participant."   (Plan, 4.1).  Thus, both the Committee Defendant and Defendant Advent (or whichever Advent entity employs that specific participant) must maintain records reflecting participant accounts.

54.     Additionally, "Participant Accounts and Benefit Accounts shall be maintained by the Employer and/or the Administrator as entries on its books," (Plan, 4.4), meaning both Defendants share these responsibilities, not just the Committee Defendant.

55.     Moreover, the Committed Defendant does not determine the cost of benefits.  (Plan. 6.1).

56.     Likewise, "the Employer (and any insurance contracts purchased or held by the Employer and/or the Administrator) shall be the sole source of Benefits under the Plan," (11.7), not the Committee Defendant.

57.     Additionally, under the Plan Defendant Advent (or whichever Advent entity employs the specific participant) also determines when Benefit Credits, Health FSA and Dependent Care Flexible Spending Account balances (if any), not otherwise are forfeited or instead paid to the participant.  (Plan, 6.2).

58.     Not only that, Defendant Advent (or whichever Advent entity employs a specific participant) "...has designated and trained certain employees to be the only employees of the Employer who will have access to Protected Health Information on behalf of the Health Plan." (Plan, 7.4).

59.     All expenses incurred by the Committee Defendant are paid by Defendant Advent (or whichever Advent entity employs a specific participant). (Plan, 8.4).

60.     The Committee Defendant is the Plan Administrator and is also the Plan's named fiduciary.  (Plan, 8.1).

61.     The employees who work for Defendants are also not employees of a church.

62.     Under the Plan, there are no procedures for exhausting COBRA-related claims under the Plan as the Plan claims it is exempt from COBRA.

63.     Moreover, according to the Plan document:

OUTBREAK PERIOD has the same meaning as that term has under the Federal Notification issued by the Employee Benefits Security Administration and the Internal Revenue Service (the "Agencies") and published in the Federal Register on May 4, 2020 (the "Notification"), which extended certain time frames relating to special enrollment rights and claims, appeals and external review procedures for employee benefit plans and currently means the period beginning

March 1, 2020 and ending 60 days after the announced end of the National Emergency Period that began on March 1, 2020 relating to the COVID-19 outbreak (or on any other date that is subsequently announced by the Agencies).

(Plan, 1.19).

### ***Plaintiff Worked for Defendant Advent***

64.     Plaintiff is a registered nurse who worked for Defendant Advent from August of 2019 through May of 2020.

65.     During that time she obtained medical insurance from Defendant Advent, which was particularly important because of a painful and ongoing serious medical condition from which Plaintiff suffers (psoriatic arthritis) that requires constant medical treatment.

66.     On May 5, 2020, Plaintiff's employment ended.

67.     Plaintiff was not terminated for "gross misconduct" and was, therefore, eligible for continuation coverage.

68.     Following Plaintiff's termination, Defendants caused their administrator to mail Plaintiff the deficient notice identified herein.

69.     The notice was not written in a manner calculated to be understood by the average plan participant.

70.     The notice did not provide Plaintiff with the substantive information to she was entitled pursuant to federal law, as set out further below, giving rise to this lawsuit.

71.    Plaintiff was not required to exhaust any administrative remedies through Defendant prior to bringing suit because no such administrative remedies exist as this is not an ERISA claim for benefits.

72.    Even if they did exist, any attempts to exhaust the administrative remedies would have been futile as this is not an ERISA benefits case.   In fact, exhaustion of administrative remedies is not required because Plaintiff was not provided with proper notice of her rights in the first instance.

## *The Church Exemption Does Not Apply*

73.    ERISA generally applies to any employee benefit plan, if it is established or maintained by an employer or employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a).

74.    However, ERISA contains an exemption for "church plans." Church plans are plans "established and maintained...for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26." 29 U.S.C. § 1002(33)(A).

75.    Church plans include plans maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.  29 U.S.C. § 1002(33)(C).

14

76.     Under Section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan must be both "established" and "maintained" by a church or by a convention or association of churches to qualify for the church plan exemption.

77.     Similarly, 29 U.S.C. § 1002(33)(C) makes clear that under ERISA a church plan includes: a plan maintained by an organization (1) which is controlled by or associated with a church, and (2) whose principal purpose is to administer or fund a retirement plan for church employees.  *See* 29 U.S.C. § 1002(33)(C).

78.     Defendants have not and cannot satisfy ERISA's strict requirements for the "church plan" exemption.

### *The Advent Health Plan is Not a Church Plan*

79.     As a threshold matter, the Plan cannot be considered as "established" and/or "maintained" by a church.

80.     The Plan was established or maintained by Defendant Advent and, which by its express terms and corresponding circumstances, provides health benefits to participants and beneficiaries during employment, and beyond. As such, the Plan meets the definition of an employee benefit plan within the meaning of ERISA.

81.     Under ERISA section 3(33), 29 U.S.C. § 1002(33), only the following two provisions address which types of entities may maintain a church plan:

• ***First***, under ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A), a church plan may only be maintained by a church or by a convention or association of churches; and

15

- ***Second***, under ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), a church plan may be maintained by an organization, the principal purpose or function of which is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches.

82.     Although other portions of ERISA section 3(33)(C) address, among other matters, who can be participants in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA section 3(33)(C) do not add any other type of entity that may maintain a church plan. 29 U.S.C. § 1002(33)(C).

83.     The Advent Health Plan does not qualify as a church plan under either ERISA section 3(33)(A) or section 3(33)(C)(i), 29 U.S.C. § 3(33)(A) or (C)(i).

84.     ***First***, the Plan is not maintained by any church or convention or association of churches within the meaning of ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A).   Rather, the Advent Health Plan is maintained by Defendant Advent for its own employees (or employees of related Advent entities). Because Defendant Advent is not a church or a convention or association of churches, and does not claim to be a church or a convention or association of churches, the Defendant Advent Plan may not qualify as a church plan within the meaning of ERISA section 3(33)(A), 29 U.S.C. § 1002(33)(A).

85.     ***Second***, the Plan is not maintained by an "organization" described in ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i)—i.e., one whose principal

16

purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. Because the principal purpose or function of the Advent Health Plan is to provide healthcare services rather than to administer or fund benefit plans, the Plan does not qualify as a church plan within the meaning of ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

86.   In the alternative, to the extent Defendants claim that the Advent Health Plan is "maintained" by a principal purpose organization within the meaning of ERISA section 3(33)(C)(i) because it is administered by a committee, specifically the Committee Defendant named here, that has a principal purpose of administering benefit plans, the claim fails because the committee purportedly "administering" the Plan does not have the full range of powers and responsibilities required to "maintain" a plan.

87.   The entity that maintains the plan "has the primary ongoing responsibility (and potential liability) to plan participants."  Even the Plan itself demonstrates that the entity with the power to "maintain" the Plan is Defendant Advent, not the Committee Defendant's members, all of whom work for and are paid by Defendant Advent.

88.   By way of specific example, and as set forth previously, according to the Plan, both "[t]he Employer and/or Administrator shall maintain records reflecting a Participant Account for each Participant."  (Plan, 4.1).  Thus, both the

Committee Defendant and Defendant Advent (or whichever Advent entity employs that specific participant) must maintain records reflecting participant accounts.

89.    Additionally, "Participant Accounts and Benefit Accounts shall be maintained by the Employer and/or the Administrator as entries on its books," (Plan, 4.4), meaning both Defendants share these responsibilities, not just the Committee Defendant.  Moreover, the Committee Defendant does not determine the cost of benefits.  (Plan. 6.1).  Likewise, "the Employer (and any insurance contracts purchased or held by the Employer and/or the Administrator) shall be the sole source of Benefits under the Plan," (11.7), not the Committee Defendant. Thus, the entity with the power to "maintain" the Plan is Defendant Advent.

90.    Additionally, even if the Committee Defendant  "maintained" the Plan, such an internal committee of Defendant Advent does not qualify as a distinct principal-purpose "organization" within the meaning of ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

### *Even if the Advent Health Plan Was Maintained by a Permissible Entity, It Nonetheless Fails to Satisfy Other Elements of the Church Plan Definition*.

91.    But that's not all.  Under both ERISA section 3(33)(A) and (C)(i), a church plan must be maintained for the employees of a church or a convention or association of churches. 29 U.S.C. § 1002(33)(A), (C)(i).

92.    Participants in the Adventist Health Plan work for Defendant Advent (or some other Advent-related entity), a non-profit hospital system. Defendant Advent is not a church or convention or association of churches, and its employees

18

are not employees of a church or convention or association of churches.  Nor do the Defendants suggest otherwise.  This also makes the Church exemption inapplicable.

93.    Under ERISA section 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax-exempt organization that is controlled by or associated with a church or a convention or association of churches may also be considered an employee of a church. But the Defendant Advent's Health Plan also fails this part of the definition, because Defendant Advent is not controlled by or associated with a church or a convention or association of churches within the meaning of ERISA.

94.    Defendant Advent is organized as a non-profit corporation under Florida law.

95.    Defendant Advent is governed by a Board of Officers, which includes the Chair of the Board of Directors.

96.    Defendant Advent's Board of Directors owes fiduciary duties to the non-profit corporation.

97.    Defendant Advent is not controlled by a church or convention or association of churches.

98.    Defendant Advent is not owned by a church or convention or association of churches.

99.    Defendant Advent is not operated by a church or convention or association of churches.

100. Moreover, Defendant Advent is not sufficiently "associated with" a church or convention or association of churches within the meaning of ERISA section 3(33)(C)(ii). 29 U.S.C. § 1002(33)(C)(ii).

101. For example, Defendant does not impose any denominational requirement on its employees.

102. Additionally, according to its 2019 IRS 990 form, Defendant Advent did not claim the reason for its public charity status was, in fact, based on it claiming that it constitutes "[a] church, convention of churches, or association of churches described in section 170(b)(1)(A)(i)." In fact, Defendant Advent left that box "blank."

103. Instead, Defendant Advocate claimed its public charity status under Section 170(b)(1)(A)(iii), "an organization the principal purpose or functions of which are the providing of medical or hospital care or medical education or medical research, if the organization is a hospital, or if the organization is a medical research organization directly engaged in the continuous active conduct of medical research in conjunction with a hospital, and during the calendar year in which the contribution is made such organization is committed to spend such contributions for such research before January 1 of the fifth calendar year which begins after the date such contribution is made."

104. Similarly, Defendant has affiliated with religious organization outside of its own including, for example, The Central Texas Medical Center, which is

associated with Christus Health, a Catholic not-for-profit health care system with over 600 centers.[5]

105.   Not only that, if Defendant Advent was "controlled" by the Seventh Day Adventist Church, the Church itself would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by its various facilities.   That does not happen because, in fact, Defendant Advent is not controlled by the Church.   Nor is the Committee Defendant (for the same reasons).

106.   In choosing to compete in the commercial areas of healthcare services, Defendant Advent must be willing to accept non-Adventist and neutral regulations, such as ERISA, imposed to protect its employees' legitimate interests.

107.   For these reasons, the Adventist Health Plan further fails to satisfy the requirements of ERISA section 3(33)(C)(i) because, even if the Plan was "maintained" by the an internal committee and even if the committee qualified as a principal-purpose "organization," ERISA section 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), requires that a principal purpose organization be "controlled by or associated with" a church or a convention or association of churches.

---

[5] According to a recent article, "The Central Texas Medical Center, which first opened its Wonder World Drive location in 1983 and is part of the AdventHealth system, will be transferring ownership to Christus Health in the spring of 2020.  Christus Health is a Catholic not-for-profit health care system with over 600 centers. Such centers include long-term care facilities, community hospitals, walk-in clinics and health ministries. Christus Health announced the ownership transfer in a press release on Feb. 3. The president of AdventHealth, Terry Shaw, said in a press release CTMC would benefit from joining Christus Health as it is 'a strong health care system with a robust regional network.'" Until the ownership transfer is complete, CTMC will continue to be part of AdventHealth. Over the next few months, both health care systems will work together to transition CTMC's patients, physicians and team members." https://communityimpact.com/austin/san-marcos-buda-kyle/impacts/2020/02/06/central-texas-medical-center-will-be-under-new-ownership-by-spring-of-2020/

108.   Defendant Advent's internal committee, the Committee Defendant named here, is simply not controlled by or associated with a church or convention or association of churches" within the meaning of ERISA.

### *ERISA Section 3(33)(B)(ii) Prohibits*
### *Application of the Church Exemption to the Plan*

109.   Under ERISA section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from church plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches.

110.   Thus, even if the Advent Health Plan could otherwise qualify as a church plan under ERISA sections 3(33)(A) or (C)(i), 29 U.S.C. §§ 1002(33)(A), (C)(i), the Plan still would be foreclosed from church plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii) because, on information and belief, the Plan covers more than an insubstantial number of employees that work for Adventist-related subsidiaries or affiliates which are not controlled by or associated with any church or convention or association of churches that are not tax-exempt.

111.   Put another way, the thousands of people who work for Defendant Advent across the country who are covered by the Advent Health Plan do not work for the Seventh Day Adventist Church.

### *Defendant Advent is the Plan Sponsor and Plan Administrator; in the Alternative, the Committee Defendant is the Plan Administrator*

112.   As an employer establishing and/or maintaining the Advent Health Plan, Defendant Advent is and has been the Plan Sponsor of the Plan within the meaning of ERISA section.

113.   As Defendant Advent is and has been the Plan Sponsor of the Advent Health Plan, and the Committee Defendant acts as an agent for Defendant Advent, Defendant Advent is also the Plan Administrator of the Plan within the meaning of ERISA.

114.   As such, Defendant Advent also is and has been a fiduciary with respect to the Plan within the meaning of ERISA, because the Plan Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the Plan.

115.   Defendant Advent "maintains" the plan because it has the primary ongoing responsibility (and potential liability) to plan participants. In other words, Defendant Advent has the ultimate responsibility for, providing benefits that "maintains" a plan.

116.   Even if the Committee Defendant maintained the Plan, which it does not, it cannot qualify as a "principal purpose organization." The Committee Defendant is not an "organization" at all; it is simply a nonjuridical subset of Defendant Advent – an internal benefits committee whose members are paid by Defendant Advent.

117.   Alternatively, the Committee Defendant, pursuant to the terms of the instrument under which the Advent Health Plan is operated, is acting as an agent of Defendant Advent, and designated as the "administrator" of the Plan. As such, the Committee is also considered the Plan Administrator of the Plan within the meaning of ERISA.

118.   The Plan was, thus, not established and certainly not "maintained by a church or convention or association of churches," as required by the church exemption.

119.   Moreover, Plaintiff and the putative class members covered by the Advent Health Plan are not employees of a permissible entity under the church plan exemption, meaning an entity controlled by or associated with a church.

120.   Rather, they are by-and-large former employees (and family members of former employees) who worked for a multi-billion dollar healthcare organization known as Adventist Health System.  It simply is not a church.

121.   Moreover, Defendants' status as a healthcare business is shown by issuance of hundreds of millions of dollars in governmental bonds through Orange County (Florida) Health Facilities Authority and the Highlands County (Florida) Health Facilities Authority, governmental entities whose stated purpose is to assist the funding of health facilities.

122.   Despite the Plan's status as an ERISA plan, Defendants have invoked "church plan" status to evade ERISA's/COBRA's protections and notice requirements to which its employees are entitled.

123.   Defendants' failure to treat the Plan as an ERISA plan deprived Plaintiff and the putative class members of their right to receive a COBRA notice. Defendants' failure also precluded Plaintiff and the putative class members from taking advantage of the critical COVID-19 enrollment and payment deadlines, even though the Plan claimed to expressly adopt the "Outbreak Period" language used by Congress.

124.   Moreover, by avoiding ERISA's requirements, Defendants obtain a competitive advantage over other healthcare entities that comply with ERISA, and with COBRA's notice requirements.

125.   Additionally, Defendants' purpose is to provide healthcare services, not to operate a church, much less a health plan for a church's employees.

126.   Since the Plan is maintained by a multi-billion dollar healthcare organization, it cannot be considered as having been maintained by "an organization ... the principal purpose of which is the administration or funding of a plan or program for the provision of retirement benefits...." 11 U.S.C. § 1002 (33)(C)(i).

127.   Consequently, Defendants are subject to ERISA, including COBRA's notice requirements. This action seeks to require Defendants to comply with all of those requirements, and to pay damages and penalties as a result of its past failure to do so.

### *Defendants' Notice Is Inadequate and Fails to Comply with COBRA*

128.   Defendants failed to provide a COBRA notice that complies with the law.

129.   Moreover, Defendants choose not to use the Model COBRA Notice to notify plan participants of their right to continuation coverage even though the Model Notice adequately provides all required information and would have provided Defendants with a "safe harbor" if used. The Model Notice further demonstrates how the information can, and is required to, be written in a manner calculated to be understood by the average plan participant providing a near-foolproof way for persons to sign up for continuing coverage of their existing benefits.

130.   Rather than use the Model Notice, much less a compliant COBRA Notice, Defendants instead deliberately authored and disseminated a notice which omitted critical information required by law and also cut the election deadline short by at least one month.

131.   Defendants' deficient Notice discourage participants from enrolling in continuation coverage, including the Named Plaintiff here.

132.   Defendants' Notice violates several key COBRA requirements, including each of the following:

- Inclusion of the date by which the election must be made;

- An explanation of the continuation coverage termination date;

- An explanation of the consequences of failing to elect or waiving continuation coverage;

- An explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

- A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended;

- Identification of the qualifying event;

- Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event; and finally,

- Defendants failed to provide a notice "written in a manner calculated to be understood by the average plan participant."

*See* 29 C.F.R. § 2590.606-4 *et seq.*

133. Not only that, Defendants' notice violated the 60-day enrollment deadline mandated by ERISA section 605 and 4980B(f)(5) by shortening the enrollment period to just 30 days. *See also* 29 U.S.C. § 1165(1).

134. Defendants' COBRA Notice confused Plaintiff and resulted in her inability to make an informed decision as to electing COBRA continuation coverage.

135. As a result of the deficient notice, Plaintiff did not elect COBRA continuation coverage and Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of health insurance coverage. Insurance coverage is an employer subsidized benefit of employment of tremendous monetary value, the loss of which is a tangible economic injury.

136.   Furthermore, Plaintiff suffered a second tangible economic loss when she paid out-of-pocket for medical expenses incurred after she lost her health insurance.

137.   Plaintiff suffered an additional concrete harm in the form of stress and anxiety caused by the loss of her health insurance.

138.   Additional time was spent trying to figure out which providers would treat her when she lost her health insurance.

139.   Plaintiff did not enroll in the continuation coverages made available to her, based, in part, on the based on the deficiencies identified herein in the Defendants' notice, including but not limited to: its shortened deadline to enroll and the specific deficiencies identified in paragraph 43.

140.   The loss of her medical, dental, and vision are directly attributable to Defendants' deficient notice because they led to Plaintiff not enrolling in COBRA continuation coverage.

141.   In fact, because of Defendants' COBRA notice, which resulted in Plaintiff not electing COBRA continuation coverage, Plaintiff lost her health insurance.

142.   Not only that, in May 2020, the government extended the deadline to enroll in and pay for COBRA continuation coverage so that no one would lose their medical coverage during Covid for at least one year. *See* 85 Fed. Reg. at 26353-54 (Section III.A(2).

143.   For COBRA enrollment deadlines that occur during the Covid "Outbreak Period," up to one year must be disregarded in determining the due dates for individuals to elect COBRA continuation coverage and pay COBRA premiums during the Outbreak Period. The Outbreak Period for an individual to elect COBRA continuation coverage and the Outbreak Period for the individual to make initial and subsequent COBRA premium payments generally run concurrently.  *See* 85 Fed. Reg. at 26353 and "Extension of COBRA election and premium payment deadlines under section 7508A(b)", available at https://www.irs.gov/pub/irs-drop/n-21-58.pdf.

144.   This means that if Defendants had not opted to improperly deny it is subject to ERISA/COBRA by application of the church exemption, Plaintiff's deadline to enroll and pay for COBRA would have been extended by at least one year, or at least until the Government declared the "National Emergency" related to COVID was over.  85 Fed. Reg. at 26353.  This would have permitted Plaintiff to keep her health insurance and pay for it later once she got another job (which she eventually did).

145.   But, of course, because Defendants improperly claimed the church exemption, neither Plaintiff nor any of the putative class members were able to take advantage of this crucial Congressional mandate.   As a result, Plaintiff lost her health insurance and incurred medical bills during the year 2020.

146.   Besides these concrete injuries, Defendants' deficient COBRA Notice caused Plaintiff an informational injury when Defendants failed to provide her

29

with information to which she was entitled by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).

147.   Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).   Defendants injured Plaintiff and the putative class members she seeks to represent by failing to provide them with the information required by law.

## CLASS ACTION ALLEGATIONS

148.   Plaintiff brings this action as a class action pursuant to Rule 23 Fed.R.Civ.P. on behalf of the following persons:

> **All participants and beneficiaries in the AdventHealth Employee Benefit Plan who were sent the same deficient notice by Defendants that Plaintiff was sent, during the applicable statute of limitations period, who did not elect benefits**.

149.   No administrative remedies exist as a prerequisite to Plaintiff's claim on behalf of the Putative Class.   As such, any efforts related to exhausting such non-existent remedies would be futile.

150.   Numerosity:   The Class is so numerous that joinder of all Class members is impracticable.   On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

151.   Typicality:   Plaintiff's claims are typical of the Class.  The COBRA notice  that Defendants sent to Plaintiff was a form notice that was uniformly provided to all Class members.  As such, the notice that Plaintiff received was typical of the notices that other Class Members received and suffered from the same deficiencies.

152.   Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class members; she has no interests antagonistic to the class, and she has retained counsel experienced in complex class action litigation.

153.   Commonality:   Common questions of law and fact exist as to all members of  the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.   Whether the Plan is covered by ERISA;

b.   Whether the Plan is a church plan;

c.   Whether Defendants violated ERISA by not providing a Summary Plan Description and/or filing form 5500's;

d.   Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

e.   Whether Defendants' notice complied with the requirements of 29  U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

f.   Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

g.   The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and, finally,

h.   Whether (and the extent to which) other relief should be granted based on Defendants' failure to comply with COBRA notice requirements.

154.   Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution.

155.   Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices and the adequacy of their COBRA notice.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

156.   Plaintiff intends to send notice to all Class Members.  The names and addresses of the Class Members are available from Defendants' records, as well as from Defendants' third-party COBRA administrator.

## CLASS CLAIM I FOR RELIEF
### *Violation of 29 U.S.C. § 1166 and*
### *29 C.F.R. § 2590.606-4, Enforced Through 29 U.S.C. § 1132*

157.   The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

158.   Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware of the same.

159.   On account of such qualifying event, Defendants sent Plaintiff and the Class Members a COBRA notice.

160.   The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above, for which Plaintiff brings this civil action under the authority found in 29 U.S.C. § 1132.

161.   These violations were material and willful.

<u>CLASS CLAIM II FOR RELIEF</u>
***(Claim for Equitable Relief Pursuant to ERISA Section 502(A)(3) Against Defendants)***

162.   Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

163.   ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of this title." Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Advent Health Plan is not a Church Plan within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and thus is subject to the provisions of ERISA.

164.   ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action to "(A) to enjoin any act or practice

which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

165.   Pursuant to these provisions, Plaintiff seeks orders directing Defendants to bring the Advent Health Plan into compliance with ERISA.

166.   ERISA section 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." ERISA § 409(a), 29 U.S.C. § 1109(a).

167.   Because the operation of the Plan as a non-ERISA Plan was a breach of Defendants' fiduciary duties, Defendants breached their fiduciary duties and Plaintiffs also seek Plan-wide equitable and remedial relief under ERISA section 502(a)(2).

168.   As the Adventist Health Plan is not a church plan within the meaning of ERISA section 3(33), 29 U.S.C. § 1002(33), and meets the definition of a health plan under ERISA, the Plan should be declared to be an ERISA-covered health

plan, and Defendants should be ordered to bring the Plan into compliance with ERISA, including by remedying the violations set forth herein.

**CLASS CLAIM III FOR RELIEF**
***(Claim for Violation of ERISA's Mandatory Reporting and Disclosure Provisions Against Defendant Advent, or in the alternative, the Committee Defendant)***

169.   Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

170.   Since the Plan's inception, Defendant Advent, or in the alternative, the Committee Defendant, has failed to provide Plaintiff or any member of the Class with a Summary Plan Description with respect to the Plan that meets the requirements of ERISA section 102, 29 U.S.C. § 1022.

171.   Because Defendant Advent, or in the alternative, the Committee Defendant, has been the Plan Administrator of the Plan at all relevant times, it violated ERISA section 104, 29 U.S.C. § 1024, by failing to provide Plaintiff and members of the Class with adequate Summary Plan Descriptions.

172.   Similarly, because Defendant Advent, or in the alternative, the Committee Defendant, has been the Plan Administrator of the Plan at all relevant times, it violated ERISA violated ERISA section 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Advent Health Plan with the Secretary of Labor in compliance with ERISA section 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments that the Secretary has

35

approved as an alternate method of compliance with ERISA section 103, 29 U.S.C. § 1023.

## **PRAYER FOR RELIEF**

*WHEREFORE*, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

a.   Designating Plaintiff's counsel as counsel for the Class;

b.   Issuing proper notice to the Class at Defendants' expense;

c.   Entering a Declaratory Judgement declaring that the Advent Health Plan as an ERISA-covered health plan, and Defendants should be ordered to bring the Plan into compliance with ERISA, including by remedying the violations set forth above;

d.   Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

e.   Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

f.   Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

g.   Alternatively, to the extent the Court opts not to award statutory penalties, nominal damages should be awarded;

h.   Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

36

  i. Granting such other and further relief, in law or equity, as this Court deems appropriate.

DATED this 12th day of October, 2021.

      Respectfully submitted,

      */s/ Brandon J. Hill*
      **LUIS A. CABASSA**
      Florida Bar Number: 0053643
      Direct No.: 813-379-2565
      **BRANDON J. HILL**
      Florida Bar Number: 37061
      Direct No.: 813-337-7992
      **WENZEL FENTON CABASSA, P.A.**
      1110 North Florida Avenue, Suite 300
      Tampa, FL 33602
      Main No.: 813-224-0431
      Facsimile: 813-229-8712
      Email: lcabassa@wfclaw.com
      Email: bhill@wfclaw.com
      Email: gnichols@wfclaw.com
      **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of October, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

      */s/ Brandon J. Hill*
      **BRANDON J. HILL**